**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|   |   |
|---|---|
| James Hallgren,<br><br>              Plaintiff,<br><br>v.<br><br>The AT&T Umbrella Benefit Plan No. 1; and AT&T Services, Inc.,<br><br>              Defendants. | No. CV-11-02443-PHX-DGC<br><br>**ORDER** |

On June 29, 2012, Plaintiff James Hallgren and Defendants AT&T Umbrella Benefit Plan No. 1 and AT&T Services, Inc., (collectively, "AT&T") filed motions for summary judgment. Docs. 29, 33. The motions have been fully briefed. Docs. 29-30, 33-35, 38-41, 54, 57. For the reasons that follow, the Court will deny Plaintiff's motion and grant Defendants' motion.[1]

**I.    Background.[2]**

James Hallgren began working at AT&T in 2000. Doc. 34 ¶ 1. As an AT&T employee, Hallgren was a participant in an ERISA-governed employee disability benefit plan. Doc. 30 ¶ 3. SBC Communications Inc. was the plan administrator. *Id.* ¶ 4. Later,

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Plaintiff's counsel filed a notice of James Hallgren's death on August 7, 2012, and moved on November 4, 2012 to substitute his wife and personal representative, Beth Hallgren, as Plaintiff. Doc. 51. The motion is unopposed and will be granted. For ease of reference, the Court will refer in this order to James Hallgren as Plaintiff.

SBC Communications Inc. became AT&T Inc., and AT&T Services Inc. became the plan administrator. *Id*. ¶ 5. Sedgwick Claims Management Services, Inc. is a third-party claims administrator of the plan that Defendant maintains has full authority to grant or deny claims. *Id*. ¶ 6.

As a result of injuries to his knee, hip, and back, Hallgren left work and began receiving Short Term Disability ("STD") benefits on April 21, 2006. Doc. 34 ¶ 3-6. Under the terms of the plan, STD determinations are renewed periodically, and Long Term Disability ("LTD") is defined as "the period immediately following a period of fifty-two (52) weeks for which [STD] benefits have been paid, for which [LTD] benefits are payable under the Plan for a Total Disability." Doc. 30 ¶ 11. Hallgren was approved for multiple periods of STD benefits in 2006 and the beginning of 2007. *Id*. ¶ 22. Eventually, however, the case manager determined that Hallgren did not qualify for STD benefits after February 9, 2007, and informed Hallgren that if he did not return to work on February 12, 2007, his STD claim would officially be denied. *Id*. ¶¶ 32-33. The claim administrator also noted that if his claim was denied for not returning to work, "ERISA and [the appeals process] will afford him opportunity to present these concerns." Doc. 37 at 40. Hallgren did not return to work. On February 14, 2007, the claims manager informed him that his STD claim was denied for failure to return to work and that his LTD claim would be denied because he did not fulfill the 52-week period. Doc. 30 ¶¶ 35-36.

Hallgren appealed the denial of STD and LTD benefits. *Id*. ¶ 45. On March 22, 2007, while his appeals were still pending, Hallgren wrote a letter to his supervisor in which he expressed concern that he would be fired and stated that "[i]f resignation is my only option at this point to keep from getting fried and losing my retirement, then I must submit the attached resignation effective 3/22/2007." Doc. 34 ¶ 65. On March 30, 2007, Hallgren's supervisor informed the claim administrator that Hallgren had resigned. Doc. 30 ¶ 44.

On June 27, 2007, based on allegedly new information that Hallgren could only sit

for four to six hours a day, the claim administrator reinstated his STD claim, overturning the previous denial. Doc. 30 ¶¶ 46-48. This decision reinstated benefits between February 10 and Hallgren's March 22 resignation, but the date of resignation still left Hallgren with fewer than the 52 weeks of STD required to qualify for LTD benefits. *Id*. ¶ 49. In this action, Hallgren challenges the denial of benefits.

## II.     Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    Standard of Review.

"A denial of benefits challenged under [29] U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan does confer discretionary authority, it is reviewed under an abuse of discretion standard. *Id*. "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id*. (quoting

Restatement (Second) of Trusts § 187, Comment d (1959)).

Hallgren argues that *de novo* review should be applied because discretion was not properly delegated. AT&T claims that discretion was properly delegated under the terms of the SBC Plan and that the abuse of discretion standard should therefore apply. Both parties miss the mark in addressing the standard of review.

Hallgren has not alleged that the claim administrator abused its discretion when it denied his claim. He argues instead that his resignation should be invalidated by the Court, and that the administrator's decision will necessarily be different if his resignation is disregarded. In making its decision in this case, however, the administrator did not address the validity of Hallgren's resignation; it simply assumed the resignation was effective. Thus, the Court's consideration of the resignation's validity will not constitute a review of a decision made by the administrator and is not governed by standards that normally apply when administrator decisions are reviewed. The Court must address the validity of the resignation under traditional standards for court action in civil litigation, which involve *de novo* review of legal and factual issues presented by the parties. If the Court holds that Hallgren's resignation was invalid, Hallgren asks that the disability determination be remanded to the administrator for review in light of this holding.

**IV. Analysis.**

Hallgren has presented several reasons for invalidating his resignation. He argues that the resignation was a unilateral mistake and that his supervisor at AT&T was under a fiduciary duty to inform him of the mistake. He argues that AT&T should be estopped from enforcing the resignation. He also argues that, in reversing the previous decision, the claim administrator had a duty to return him to his status quo ante, which required rescission of his resignation.[3]

---

[3] Although both parties at least partially brief whether Hallgren's resignation amounted to a "constructive discharge," Plaintiff expressly disclaims that theory of recovery. *See* Doc. 54 at 6 ("Defendants attempt to characterize Hallgren's resignation as constructive discharge, which is not at all Hallgren's theory for relief and is irrelevant to this case."). The Court therefore will not address this issue.

### A. Unilateral Mistake and Breach of ERISA Fiduciary Duty.

Hallgren invokes ERISA, 29 U.S.C. § 1132(a)(1)(B), and the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as grounds for the Court to provide "equitable relief" and declare his resignation invalid. Doc. 1-1 at 8. He argues that he resigned because of the administrator's mistaken determination that he was not eligible for STD benefits and because he mistakenly believed that resignation was the only way to protect his rights. Doc. 33 at 9. Because courts are authorized to provide equitable relief in ERISA cases, *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1869 (2011), Hallgren asks for recession of his resignation as a unilateral mistake, arguing that his supervisor and the claim administrator were fiduciaries who had a duty to inform him that the resignation might be harmful. Doc. 33 at 10-11.

In *In re Computer Sciences Corp. Erisa Litig.*, 635 F. Supp. 2d. 1128 (C.D. Cal. 2009), *aff'd sub nom.*, *Quan v. Computer Science Corp.*, 623 F.3d 870 (9th Cir. 2010), the court held that ERISA fiduciaries have "an affirmative duty to inform when the fiduciary knows that silence might be harmful." *Id.* at 1139. Hallgren argues that one of the individuals who administered his claim, Rosenston, and his supervisor at work, Rieter, were ERISA fiduciaries who had a duty to inform him that his resignation was not necessary to "preserve his retirement." Doc. 33 at 10-13. He asserts that Rosenston and Rieter breached this duty when they failed to so inform him. The Court is not persuaded.

First, Hallgren's complaint does not allege that AT&T, Rosenston, Rieter, or any other person breached ERISA fiduciary duties. *See* Doc. 1-1 at 3-10. The Ninth Circuit has held that where a complaint does not provide notice of a legal theory, the theory may not be raised for the first time in summary judgment briefing. *See Pickern v. Pier 1 Imports, Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).

Additionally, even if the issue were properly before the Court, there is no evidence that Hallgren's supervisor, Nancy Reiter, was an ERISA fiduciary, or that the claim administrator, Rosenston, knew the reasons for Hallgren's resignation or had reason to suspect its validity. Fiduciaries under ERISA are those who "exercise[] discretionary

authority or control respecting the management or administration of an employee benefit plan." *Kyle Rys, Inc. v. Pac Admin. Services, Inc.*, 990 F.2d 513, 516 (9th Cir. 1993); 29 U.S.C. § 1002(21)(A). The record shows that Rieter, who was Hallgren's supervisor at work, asked Rosenston to provide updates on Hallgren's status (Doc. 37 at 27), and that Reiter provided Deb Patterson, an "appeal specialist," with information regarding the physical demands of Hallgren's job so that she could determine if his limitations would prevent him from returning to work (Doc. 37 at 50). Hallgren has not provided any evidence that Rieter exercised discretionary authority or control with respect to the disability determination.

Rosenston exercised discretion with respect to the claim and was therefore a fiduciary, but Hallgren has provided no evidence that she knew the reasons for his resignation, knew whether or not his retirement benefits would be jeopardized if he was terminated, had responsibility for considering the validity of his resignation, or had authority to set aside the resignation. Rosenston was informed by Reiter that Hallgren had resigned (Doc. 37-1 at 50-51), and, in light of that fact, Hallgren was found not to qualify for LTD benefits (Doc. 37-1 at 2-3). The record does not reflect that Rosenston was provided any details regarding Hallgren's resignation. The relevant note simply states that on March 30, 2007, Rosenston received a voice mail from Reiter stating that Hallgren "resigned from the company effective 3/23/07." Doc. 37-1 at 50. Rosenston returned the call and advised Reiter that the records would not show Hallgren failed to return to work, "but rather resigned." *Id.* at 50-51.

In summary, although Rosenston appears to be a fiduciary under ERISA, Hallgren has presented no evidence that she knew the nature of his resignation, received a copy of his resignation letter, communicated with him about the resignation, knew whether or not his retirement benefits would be affected by his termination, or had a duty to evaluate the validity of his resignation. Hallgren therefore has not presented evidence to show that Rosenston breached a fiduciary duty under ERISA. Although Reiter did receive Hallgren's resignation letter (Doc. 37-1 at 64), Hallgren has presented no evidence that

she was a fiduciary under ERISA. He therefore has not shown that Reiter breached a fiduciary duty under ERISA.

**B.     Estoppel.**

"An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation and extraordinary circumstances." *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (citation omitted). For estoppel to apply in the Ninth Circuit, the provisions of the ERISA plan must have been sufficiently ambiguous for reasonable persons to disagree on its meaning, and representations made to the employee must have amounted to an oral interpretation of the plan. *Id.*; *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992). If those conditions are not met, "a beneficiary has no equitable estoppel claim." *Id.* at 821-22.

As with the fiduciary duty claims above, Hallgren's estoppel theory is not alleged in his complaint and therefore cannot be raised on summary judgment. *Pickern*, 457 F.3d at 968-69. Even if the issue were properly before the Court, however, Hallgren has failed to produce evidence to satisfy the elements of an estoppel claim.

Hallgren's claim is based on AT&T's alleged failure to warn him of the potentially adverse consequences of his resignation. Doc. 33 at 14. He does not allege a material misrepresentation apart from the failure to warn, nor does he cite any authority holding that a failure to warn can amount to a material misrepresentation. Nor does he present evidence that the terms of the plan were ambiguous or that AT&T made misrepresentations amounting to an oral interpretation of the plan. The record therefore does not contain evidence to support a finding of estoppel. As noted above, summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**C.     Status Quo Ante.**

Where the terms of an ERISA plan are applied incorrectly, the proper remedy is to

remand the decision so that the administrator can "apply the terms correctly in the first instance." *Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1221 (9th Cir. 2008). Citing Seventh Circuit authority, Hallgren also argues that a court should return a claimant to the "status quo ante" when it finds that benefits have been wrongly denied. Doc. 33 at 14 (citing *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003); *Quinn v. Blue Cross and Blue Shield*, 161 F.3d 472, 477 (7th Cir. 1998)). Hallgren argues that returning him to the status quo ante requires rescinding his resignation and restoring his employment. The Court cannot read these cases so broadly.

The Ninth Circuit in *Pannebecker* and the Seventh Circuit in *Hackett* and *Quinn* were addressing whether a court, upon finding that an ERISA administrator erred, should remand the matter for reconsideration by the administrator or should simply order an award of benefits, thereby restoring the status quo ante. The Ninth Circuit provides this explanation for the distinction:

> Where an administrator's initial denial of benefits is premised on a failure to apply plan provisions properly, we remand to the administrator to apply the terms correctly in the first instance. But if an administrator terminates continuing benefits as a result of arbitrary and capricious conduct, the claimant should continue receiving benefits until the administrator properly applies the plan's provisions. This distinction in remedies makes perfect sense, as the improper termination in the latter case was the result of arbitrary and capricious procedures, and therefore benefits could not have been terminated by those procedures.

*Pannebecker*, 542 F.3d at 1221 (citations, quotation marks, and brackets omitted).

*Pannebecker*, *Hackett*, and *Quinn* all concern the proper remedy to be applied by a court when a plan administrator fails to apply plan provisions properly or engages in arbitrary and capricious conduct. They are remedy cases; they do not establish a new cause of action for restoration of the status quo ante. If Hallgren is to obtain the relief he seeks, therefore, he must show that AT&T failed to apply the plan provisions properly or

engaged in arbitrary and capricious conduct, neither of which he argues, or he must rely on the breach of fiduciary duty and estoppel claims addressed above, neither of which can survive summary judgment. The Ninth and Seventh Circuit cases he cites provide no other basis for relief.

**V.      Conclusion.**

It appears that Hallgren resigned because he feared he would be terminated if he did not return to work after his STD benefits were denied, and feared that such a termination would jeopardize his retirement benefits. It also appears that he failed to qualify for LTD benefits because his resignation ended his employment before he had received 52 weeks of STD benefits. This is an unfortunate circumstance, but Hallgren has the burden of pleading and proving a proper cause of action. The ERISA claims he attempts to assert in his summary judgment briefing either fail as a matter of law or were not pleaded in his complaint. Because Hallgren has failed to plead and support legally sufficient claims, the Court will enter summary judgment in favor of Defendant.

**IT IS ORDERED:**

1. Plaintiff's Motion to Substitute (Doc. 51) is **granted.**
2. Defendants' motion for summary judgment (Doc. 29) is **granted.**
3. Plaintiff's motion for summary judgment (Doc. 33) is **denied.**
4. The Clerk is directed to terminate this action.

Dated this 9th day of January, 2013.

_____
David G. Campbell
United States District Judge